LAS VEGAS ICE AND COLD STORAGE COMPANY, a Nevada corporation doing business as Mr. Ice, Plaintiff–Appellant/Cross–Appellee,

v.

FAR WEST BANK, a Utah chartered banking corporation, Defendant–Appellee/Cross–Appellant.

Nos. 88–1507, 88–1504.

United States Court of Appeals, Tenth Circuit.

Jan. 12, 1990.

---

Fred R. Silvester, Stewart M. Hanson, Jr., and Charles P. Sampson of Suitter, Axland, Armstrong & Hanson, Salt Lake City, Utah, for plaintiff-appellant/cross-appellee.

Jerry L. Reynolds and Dallas H. Young of Ivie and Young, Provo, Utah, for defendant-appellee/cross-appellant.

Before HOLLOWAY, Chief Judge, and BALDOCK, Circuit Judge and THOMPSON, District Judge.*

* The Honorable Ralph G. Thompson, Chief Judge of the Western District of Oklahoma, sitting by designation.

RALPH G. THOMPSON, Chief District Judge.

Las Vegas Ice and Cold Storage Co. (Las Vegas Ice) filed suit against defendant Far West Bank seeking to recover the amount of a $20,000.00 check drawn on the defendant by a bank customer, pursuant to § 70A–4–213(1) of the Utah Uniform Commercial Code. The plaintiff subsequently moved to amend its complaint to add a claim for punitive damages. The district court denied the motion to amend and entered judgment in favor of the plaintiff. Both parties have appealed. We affirm.

The facts of this case are undisputed. On November 9, 1985, Brookside Ice signed a $20,000.00 check payable to the order of the plaintiff. The check was drawn on Brookside Ice's account with defendant Far West Bank. On November 13, 1985 the plaintiff deposited the check in its account at Valley Bank, which then transferred the check to Zions First National Bank (Zions Bank) for collection. Zions Bank presented the check through the Federal Reserve Bank to the defendant for payment on November 18, 1985. On November 19, 1985 defendant completed the process of posting the check. The provisional settlement of the check, previously made by the defendant, then became final. On November 25, 1985 the defendant returned the check to Zions Bank unpaid because the account of Brookside Ice lacked sufficient funds to cover it. Zions Bank then credited defendant's account, charged Valley Bank's account and sent the check back to Valley Bank. Valley Bank then charged back the provisional credit that had previously been made to plaintiff's account and delivered the check to the plaintiff. At the time the check was drawn and presented to the defendant for payment, Brookside Ice lacked sufficient funds to pay the check and was involved in bankruptcy proceedings.

On April 13, 1986 Las Vegas filed its complaint. On July 2, 1986 the plaintiff moved for judgment on the pleadings and on July 18, 1986 the defendant moved for summary judgment. The motions were referred to a magistrate, who issued his report and recommendation that the defendant's motion be denied, that plaintiff's motion be treated as one for summary judgment, and that the plaintiff's motion be granted, except for the issue of the plaintiff's good faith in presenting the check for payment, which he concluded should be reserved for trial. The court adopted the magistrate's recommendation and entered partial summary judgments on December 19, 1986 and January 13, 1987. On September 10, 1987 the plaintiff filed a motion to amend its complaint to assert a claim for punitive damages, which the court denied. The issue of the plaintiff's good faith in presenting the check for payment was subsequently tried to the court and final judgment was entered in favor of the plaintiff on February 24, 1988.

The court will address the plaintiff's appeal from the district court's denial of its motion to amend its complaint and then Far West Bank's cross-appeal.

## APPEAL

### I. Motion to Amend

The district court refused to permit the plaintiff to amend its complaint and add a punitive damages claim based on Far West Bank's alleged intentional or reckless disregard of the Uniform Commercial Code and the plaintiff's rights. The denial was based on the district court's findings that the proposed amendment was untimely and would substantially broaden the issues for trial, and that the factual basis for the claim was known to the plaintiff at the time the complaint was filed.

■ The plaintiff contends that a motion to amend can only be denied because of prejudice to the opposing party or because the proposed amendment would be subject to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and that neither ground was present in this action. Las Vegas Ice also argues that the district court erroneously based its decision on factual findings regarding the lack of an evidentiary basis for the plaintiff's claim, made after reviewing the defendant's pleadings.

■ Without the bank's consent, Las Vegas Ice could amend its complaint only by

leave of court. Fed.R.Civ.P. 15(a). Although leave to amend "shall be freely given when justice so requires," id., whether leave should be granted is within the trial court's discretion. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127 (10th Cir.1987). Consequently, a district court's grant or denial of a motion to amend is reviewed for abuse of discretion. *State Distributors, Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405 (10th Cir.1984). Several factors are typically considered by the courts in determining whether to allow amendment of a complaint.

These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed. Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Id. at 416.

Untimeliness alone may be a sufficient basis for denial of leave to amend. Contrary to plaintiff's assertion, prejudice to the opposing party need not also be shown. In *First City Bank, N.A.,* 820 F.2d at 1133, this court held "that a district court acts within the bounds of its discretion when it denies leave to amend for 'untimeliness' or 'undue delay.'".

■ Las Vegas Ice failed to assert its punitive damages claim until approximately a year and a half after the complaint was filed, 9 months after partial summary judgment was entered and only a few months before the case was scheduled for trial on the sole remaining issue of good faith. The district court, in denying the plaintiff's motion, relied on the plaintiff's untimely assertion of the proposed amendment, noting that the facts underlying the claim were known to the plaintiff at the time suit was instituted. Although the district court's partial reliance in its decision on the defendant's pleadings was improper, the court acted within its discretion when it denied the plaintiff's motion to amend due to its untimeliness.

### CROSS–APPEAL

In its cross-appeal, Far West Bank contends that the district court erroneously concluded that it failed to "account" to the plaintiff for the amount of the check, as required by Utah Code Ann. § 70A–4–213(1).[1] The defendant also argues that the district court improperly permitted the plaintiff to bring a direct action against it under the U.C.C. Another basis for the defendant's appeal is the district court's refusal to permit the defendant to assert breach of warranty defenses. Finally, the defendant challenges the district court's finding that Las Vegas Ice acted in good faith when it deposited the check, due to its knowledge that Brookside Ice was, at that time, in reorganization proceedings.

### I. Standard of Review

The defendant challenges the district court's findings of fact and of law. Findings of fact are not overturned unless they are clearly erroneous. *Amoco Production Co. v. Western Slope Gas Co.,* 754 F.2d 303 (10th Cir.1985). A finding of fact is not clearly erroneous unless "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *LeMaire v. United States,* 826 F.2d 949, 953 (10th Cir.1987).

Issues of law are reviewed de novo. *Bill's Coal Co., Inc. v. Board of Public Utilities of Springfield, Missouri d/b/a City Utilities,* 887 F.2d 242 (10th Cir.1989). Although an appellate court is not constrained by a trial court's conclusions of law, *State Distributors, Inc.,* 738 F.2d at 412, with respect to questions of first impression under state law, the district

---

1. References to the Utah adaptation of the Uniform Commercial Code will subsequently be to U.C.C. § _____.

court's view of the unsettled law of his state is accorded deference. See *Matthews v. IMC Mint Corp.*, 542 F.2d 544 (10th Cir.1976).

## II. Accountability Under the Uniform Commercial Code

■ The plaintiff's action was premised on U.C.C. § 4–213(1), which provides that when an item is finally paid by a payor bank,[2] the payor bank is accountable for the amount of the item. The defendant does not dispute that there was final payment, but basically argues that it accounted to the plaintiff because it did not return the check for insufficient funds prior to the statutory time when the provisional credit became final. We disagree with the plaintiff's strained interpretation of the term "accountable". Because it returned the check unpaid, Far West Bank failed to "account" for the item. See 1 J. White, R. Summers, Uniform Commercial Code § 17–2 (3rd ed 1988) ("In some sense 'accountable' can be read as liable.")[3]

## III. Direct Action

■ Far West Bank asserts that because it is not entitled to assert the defenses which would be available to Valley Bank, if sued by the plaintiff, and because U.C.C. § 4–213(1) does not impose strict liability

on a payor bank, the plaintiff's claim is against Valley Bank, instead of Far West Bank, for improperly charging back its account. Consequently, the defendant maintains, the district court improperly permitted the plaintiff to sue it directly instead of requiring Las Vegas Ice to sue Valley Bank, with Valley Bank then suing Zions Bank and Zions Bank then suing the defendant.

The court is not persuaded by the defendant's arguments.[4] The defendant's inability to assert breach of warranty defenses is not a sufficient basis on which to preclude payees from suing payor banks directly.[5] Direct actions have been asserted by payees against payor banks in numerous cases. Eg. *Nelson v. Platte Valley State Bank & Trust Co.*, 805 F.2d 332 (8th Cir. 1986); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Devon Bank*, 832 F.2d 1005 (7th Cir.1987), cert denied, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988); *Starcraft Co. v. C.J. Heck Co. of Texas, Inc.*, 748 F.2d 982 (5th Cir.1984); *Chrysler Credit Corp. v. First Nat. Bank and Trust Co. of Washington*, 746 F.2d 200 (3rd Cir.1984); *Whalen & Sons Grain Co. v. Missouri Delta Bank*, 496 F.Supp. 211 (E.D.Mo. 1980).[6] In the absence of any restriction of the payor bank's accountability in the U.C.C.,[7] we decline to adopt the defendant's

2. An item is finally paid by a payor bank when one of several events occurs, which include (1) when the process of posting the item to the indicated account of the drawer, maker or other person to be charged, has been completed. U.C.C. § 4–213(1).

3. A question exists regarding a payor bank's ability to assert a restitution claim based on mistake against a payee who has presented a check drawn on insufficient funds. See J. White, R. Summers, Uniform Commercial Code § 17–2 (3rd ed. 1988). The defendant indirectly raises this issue, Brief of Appellee, p. 16, by asserting that the availability of a restitution claim negates a payor bank's strict liability under U.C.C. § 4–213(1). However, this issue was not presented to the district court and, thus, was not preserved for review.

4. The principal case relied on by the defendant is *Stone & Webster Engineering Corp. v. First Nat. Bank & Trust Co. of Greenfield*, 345 Mass. 1, 184 N.E.2d 358 (1962). It is factually and legally distinguishable because it involved a

forged endorsement. See J. White, R. Summers, Uniform Commercial Code § 15–5 (3rd edition 1988).

5. A payor bank, in an action involving a nonsufficient funds check, does not need such warranties because it has the ability to determine whether there are sufficient funds in the payee's account to cover the item.

6. Some of these cases involve claims premised on U.C.C. § 4–302, rather than U.C.C. § 4–213. For purposes of our analysis, the distinction is inconsequential. We recognize that the direct action issue was not discussed in these cases, presumably because of its lack of merit.

7. U.C.C. § 4–213(1) is conspicuously silent regarding to whom the payor bank "shall be accountable." If the drafters had intended to restrict the payor bank's accountability to the next bank in the collection chain, as defendant asserts, limiting words could easily have been added.

position and, thus, avoid an unnecessary chain of lawsuits.

## IV. Breach of Warranty Defenses

█ The defendant argues that if the plaintiff may sue it directly, then it should be permitted to assert the defense of breach of presentment warranty that would be available to Valley Bank.[8] The U.C.C. clearly restricts the plaintiff's presentment warranties to Valley Bank, as the plaintiff's transferee. See U.C.C. § 3-417(2)(e) and 4-207(2)(e). The rationale for the warranties' restriction is obvious— the payor bank has the capability of ascertaining the status of the drawer's account.

The defendant also asserts that it is entitled to assert the warranty defenses because it is a holder in due course. Far West Bank cannot qualify as a "holder in due course" because it does not possess the check and, therefore is not a "holder". U.C.C. §§ 3-302, 1-201(20). The district court properly refused to allow the defendant to defend on the ground of breach of warranty.

## V. Equitable Balancing

Defendant contends that its position is supported both by the U.C.C. and equitable considerations. The loss to the plaintiff was not due to the defendant's delay in returning the check, Far West Bank maintains, but to the lack of funds in the drawer's account. As the plaintiff dealt with the drawer of the check and was not prejudiced by the defendant's late return of the item, defendant asserts that the plaintiff should bear the loss. However, policies support the final payment rules and the placement of the loss on Far West Bank, as the payor bank. As stated by two commentators:

> If every payee who took a personal check from a customer faced the prospect that he would be at risk to return funds received from a payor against NSF checks

until a three—or five—year statute of limitations had run, commerce would be stultified. Faced with that possibility, merchants would not treat checks as the equivalent of cash and might instead insist upon cash or some other mode of payment that could not be reversed for such a long period.... Therefore, it seems clear, at least as checks are currently used in our society, that prompt response in the case of NSF funds checks is an integral and probably critical part of the bank's performance.

J. White, R. Summers, Uniform Commercial Code § 17-2, at 826-27 (3rd ed. 1988).

In addition to the policy of bringing certainty and finality to commercial payment transactions that is behind the check clearing provisions of the Uniform Commercial Code, imposing liability on the defendant places the loss on the party who can best prevent it, as the payor, not the payee, is in a position to determine the exact balance in the drawer's account. Consequently, we conclude that the loss should be placed on the defendant, as this will facilitate the use of the check as a medium of exchange and promote expediency and finality in the bank collection process.

## VI. Plaintiff's Good Faith

█ The remaining error urged by Far West Bank consists of the district court's conclusion that the plaintiff acted in good faith in presenting the check for payment.[9] The district court, in its findings of fact and conclusions of law, simply finds that "[p]laintiff did not act in bad faith in presenting the check for payment." Findings of Fact and Conclusions of Law. R., Tab 48. The defendant states that it "does not contend on appeal that the testimony adduced at trial is contrary to the court's finding, but defendant asserts that based on the stipulated facts, plaintiff did not act in good faith as a matter of law." Brief of Appellee, p. 25. It appears the defendant

---

8. We would note that the defendant previously relied on its inability to assert breach of warranty defenses in support of its argument against allowing direct actions by payees against payor banks. Brief of Appellee, p. 19.

9. The defendant failed to designate the trial transcript to the court as part of the record. Therefore, the court is without the benefit of the evidence in its consideration of this issue.

is arguing that the evidence—as stated in the stipulated facts—was undisputed and conclusive. Thus, it is the defendant's position that the district court was required as a matter of law to conclude that the plaintiff acted in bad faith in presenting the check. The pertinent undisputed facts relied upon by the defendant[10] are:

3. When plaintiff accepted the check, it knew that the Check's drawer, Afton W. Johnson, and her husband, Kent D. Johnson, dba Brookside Ice, were debtors under Chapter 11 of the Bankruptcy Code and were then operating a retail ice business as debtors-in-possession. While the Chapter 11 case was pending, Mr. Ice provided the debtors with open account credit, and the Check was to have been credited by plaintiff toward payment of the unpaid open account balance arising from purchases made by the debtors during the pendency of their Chapter 11 case.

11. Plaintiff did not advise Valley Bank at the time the Check was deposited that the drawer of the check was involved in insolvency proceedings.

These facts do not conclusively establish the plaintiff's bad faith in presenting the check for payment because a debtor-in-possession under Chapter 11 generally is authorized to continue operating its business. 11 U.S.C. §§ 363(c)(1), 1107, 1108. A debtor-in-possession also may obtain unsecured credit and incur unsecured debt in the ordinary course of business. 11 U.S.C. § 364(a). Under these circumstances, the plaintiff's acceptance of a check drawn on the account of Chapter 11 debtors-in-possession does not, as a matter of law, constitute bad faith.[11]

## VII. Conclusion

We conclude that the district court properly denied the plaintiff's motion to amend

---

10. These undisputed facts were contained in the Pretrial Order. R., Tab 45.

11. Even if the plaintiff, by its failure to notify Valley Bank of Brookside Ice's insolvency proceedings breached presentment warranties, that alone does not establish the plaintiff's failure to comply with the obligation of good faith im-

and properly granted judgment in favor of the plaintiff and against the defendant.

AFFIRMED.

posed by U.C.C. § 1–203, which is the issue here. As we have noted previously, the warranties in U.C.C. §§ 3–417(2)(e) and 4–207(2)(e) do not run a payor bank, such as the defendant.