**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID GUZMAN,

  Plaintiff-Appellee,

v.

JOSEPH POLISAR, Chief of Police;
MARTIN CHAVEZ, Mayor,

  Defendants-Appellants.

No. 99-2060
(District of New Mexico)
(D.C. No. CIV-97-1279-MV)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BRORBY,** and **MURPHY**, Circuit Judges.

I. INTRODUCTION

  Plaintiff David Guzman brought suit against defendants Joseph Polisar and

Martin Chavez (collectively "Defendants"), respectively the former Chief of

Police and Mayor of Albuquerque. *See* 42 U.S.C. § 1983. Following a non-jury

trial, the district court found that Guzman had spoken out about discrimination in

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Albuquerque Police Department ("APD"), and that the Defendants retaliated against Guzman because of that speech in violation of the First Amendment. The district court found that the Defendants retaliated by mediating a discrimination claim in bad faith, specifically by refusing to hand over certain documents requested by Guzman during the mediation. Defendants appealed, arguing *inter alia* that there was insufficient evidence to support the district court's finding that they were involved in the decision not to turn over the documents. This court agrees. Because there was no evidence to link these individuals to the alleged retaliatory act, we exercise our jurisdiction pursuant to 28 U.S.C. § 1291 and **reverse**.

## II. FACTS AND PROCEDURAL HISTORY

Guzman, who is Hispanic, was a police officer with the Albuquerque Police Department from June 1976 until his resignation in August 1998. He rose to the position of Sargent in 1983, and in the years following he sought to be promoted to Lieutenant. The process by which an officer in the APD is promoted to Lieutenant includes both a written and an oral examination, with only the most successful candidates on the written examination qualifying to take the oral examination. Guzman passed the written examination on seven different occasions, but he failed the oral examination each time and, thus, was never promoted.

Throughout Guzman's career at APD, he was both a member of and held leadership positions in several police unions, including the Chicano Police Officers' Association, the Latino Peace Officers' Association, and the New Mexico Peace Officers' Association. As a union representative, Guzman met with Defendant Chavez when Chavez was a mayoral candidate. Guzman sought to discuss issues which included the perceived discrimination against Hispanic police officers at the APD and the selection of the next Chief of Police. Chavez became upset and refused to discuss these issues. The police unions thereafter endorsed another candidate.

When Polisar was appointed Chief of Police, he refused to meet with Guzman to discuss union members' concerns, including concerns over discrimination.[1] Guzman asked then-mayor Chavez to persuade Polisar to meet with union leaders. Chavez refused Guzman's request, and he and Guzman exchanged threats.

In 1994, Guzman participated in a class action lawsuit, which became known as the "*Alianza*" lawsuit, in which the plaintiffs alleged various forms of anti-Hispanic discrimination in the APD. Defendants in the *Alianza* lawsuit included the City of Albuquerque ("City") and Defendants Chavez and Polisar.

---

[1]Guzman and Polisar had also been involved in a dispute in the mid-1980s which led to a verbal altercation between the two men.

Guzman and the other plaintiffs eventually agreed to dismiss the suit in exchange for the City's agreement to toll the statute of limitations on most of the individual plaintiffs' claims. This arrangement was reduced to a written document, the "Tolling Agreement," in which the parties also stated their intention to mediate most of the *Alianza* plaintiffs' claims.[2]

Guzman participated in three mediation sessions. Participants at these sessions included Guzman, his attorney, and police officer Sal Baragiola. During the mediation, Guzman asked to see the documents which were prepared by examiners at his past oral examinations. Guzman hoped and believed that these documents would explain why he did not qualify for promotion, either by identifying mistakes he had made or by revealing any possible biases on the part of the examiners. Baragiola told Guzman that he requested the documents from Deborah Martinez, an employee of the City's Human Resources department, but that she refused to release them. Guzman's attorney also requested the documents directly from Martinez, but she was denied access to them as well. As a result of these refusals, Guzman terminated the mediation.

---

[2]The *Alianza* defendants refused to mediate the claims of police officer Gil Najar, another police union leader, and Najar was not a party to the tolling agreement. All of the *Alianza* lawsuit plaintiffs except for Najar and Guzman resolved their claims through mediation.

Guzman then initiated this lawsuit, in which he alleged that the Defendants: 1) discriminated against him by failing to promote him because of his Hispanic national origin, in violation of the Fourteenth Amendment; and 2) retaliated against him for his speech on discrimination, in violation of the First Amendment. Guzman originally named as defendants Polisar, Chavez, and Baragiola, all in their official and individual capacities. Pursuant to pre-trial motions, Guzman stipulated to the dismissal of Baragiola in both his individual and official capacity, and to the dismissal of Chavez and Polisar in their official capacities.

A bench trial was held in October 1998 and, following an extensive recess during which Guzman conducted additional discovery, was concluded in January 1999.[3] The district court issued findings of fact and conclusions of law stating that: 1) Guzman had failed to show that Defendants discriminated against him by denying him a promotion; but 2) Defendants had retaliated against Guzman because of his protected speech by mediating his *Alianza* claims in bad faith. The district court specifically found that the Defendants retaliated against Guzman by refusing to turn over the oral examiners' documents, and that without

_____

[3]Guzman's testing file was also the subject of a discovery dispute in this litigation. The documents were turned over to Guzman during the trial, and the district court gave Guzman the opportunity to conduct additional discovery based on the documents.

those documents his efforts at mediation necessarily failed.  The district court awarded Guzman $75,000 in compensatory damages, and Defendants appealed.

III. DISCUSSION

A. Standard of Review

Defendants challenge specific findings of fact made by the district court. This court reviews findings of fact under the clearly erroneous standard.  *See* Fed. R. Civ. P. 52(a); *Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quotations omitted).

B. No Evidence of Action by the Defendants

Defendants argue that the district court's finding of fact number thirty-five was clearly erroneous:

> 35.  Mr. Guzman has shown that his speech on discrimination in the Albuquerque Police Department was a substantial factor or a motivating factor in *Defendants' refusal to disclose*, despite the existence of a signed confidentiality agreement and other guarantees of confidentiality, *his testing records* so that any of his efforts at mediation necessarily failed.

Specifically, Defendants argue that no evidence was presented at trial from which the district court could have found that they were involved in withholding the documents Guzman requested during mediation. Based on an independent review of the record, this court agrees. No evidence was presented at the trial which would link these two individuals to the decision to withhold the documents or to any other act which would defeat Guzman's efforts at mediation.[4] Because there is no evidence of personal involvement by the Defendants, we reverse.[5] *See Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996).

---

[4]In his brief, Guzman also argues that when the Defendants offered to mediate the *Alianza* lawsuit, they already knew that the City's policy was to refuse access to the oral examination records, and therefore the offer to mediate was made in bad faith. We do not read the district court's findings of fact and conclusions of law as relying on this theory. Moreover, our review of the record has also failed to reveal evidence of any prior knowledge by the Defendants of the City's policy with regard to releasing testing records.

[5]In light of our conclusion above, we need not reach the Defendants' arguments that 1) there was insufficient evidence to support the district court's finding that the testing documents were withheld in retaliation for Guzman's speech and 2) all of Guzman's evidence on damages related to his discrimination claim, and thus there was insufficient evidence to support the district court's award of damages.

IV. CONCLUSION

For the reasons stated above, this court **reverses** the decision of the

District Court for the District of New Mexico and **remands** with instructions to

the district court to vacate its judgment and enter judgment for the Defendants.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge